Slip Op. 03 - 148

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x

KYOCERA INDUSTRIAL CERAMICS CORPORA-  :
TION,
                                   :

                   Plaintiff,

                                   :
       v.                     Court No. 02-00705
                                   :

UNITED STATES,                 :

                   Defendant.   :

- - - - - - - - - - - - - - - - - - - -x

Memorandum & Order

[Defendant's motion for summary judgment
 denied.]

                              Dated: November 7, 2003

    DeKieffer & Horgan (J. Kevin Horgan and A. David Lafer) for
the plaintiff.

    Peter D. Keisler, Assistant Attorney General; Barbara S.
Williams, Acting Attorney in Charge, International Trade Field
Office, Commercial Litigation Branch, Civil Division, U.S. Depart-
ment of Justice (Jack S. Rockafellow); and Office of Assistant
Chief Counsel, International Trade Litigation, U.S. Bureau of
Customs and Border Protection (Michael W. Heydrich), of counsel,
for the defendant.

        AQUILINO, Judge:  The amended complaint filed herein on

behalf of the above-encaptioned plaintiff, the corporate name of

which its counsel have compressed to "KICC", contests denial by the

U.S. Customs Service[1] of classification of certain ceramic sub-

_____

    [1] Now known as the Bureau of Customs and Border Protection per
the Homeland Security Act of 2002, §1502, Pub. L. No. 107-296, 116
Stat. 2135, 2308-09 (Nov. 25, 2002), and the Reorganization Plan
Modification for the Department of Homeland Security, H.R. Doc.
108-32, p. 4 (Feb. 4, 2003).

strates for integrated circuits ("IC substrates") under subheading 8542.90.00 of the Harmonized Tariff Schedule of the United States ("HTSUS") ("Electronic integrated circuits and microassemblies; parts thereof: . . . Parts").  The defendant interposed an answer thereto, and its counsel have now filed a Motion to Dismiss Plaintiff's Action for Lack of Subject Matter Jurisdiction "[p]ursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade".

I

Of course, those Rules do not contemplate such a motion subsequent to joinder of issue.  Rather, USCIT Rule 12(c) provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are pre-sented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.[2]

---

[2]  Subsection (h) of that Rule 56 mandates annexation to such a motion of

> a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.

This the defendant has not done.  Rather, it has filed a motion to stay discovery pending resolution of its motion for judgment of dismissal.  According to this subsidiary motion, discovery has commenced in accordance with the court's amended scheduling order of August 27, 2003, but government counsel now take the position that the filing of the "dispositive motion to dismiss . . . [makes] discovery by either party . . . not required."  Declaration of Jack S. Rockafellow, para. 10.

The plaintiff opposes this motion for a stay on both procedural and substantive grounds, including that defendant's

(footnote continued)

Here, defendant's motion for such judgment has engendered submissions outside the pleadings on both sides. Appended to plaintiff's amended complaint is a schedule "A" of 21 enumerated protests to Customs, encompassing many more, individual, listed entries. The parties have produced copies of KICC's lengthy, written entreaty to the Service Port Director in San Francisco in support of its protests to the effect that the IC substrates are classifiable under HTSUS subheading 8542.90.00 -- or, in the alternative, under subheading 6909.11.40.[3] In HQ 964811 (May 1,

---

responses to certain interrogatories may be relevant to the issue of subject-matter jurisdiction. See, e.g., Plaintiff's Opposition to Defendant's Motion to Stay Discovery, fourth, unnumbered page.

Both sides have also filed a consent motion for oral argument on the issue of authority to order continuation of discovery in an action not subject to the court's statutory jurisdiction.

Suffice it to state, as discussed hereinabove and after, that the court's conclusion that it does indeed have such jurisdiction over this action obviates the need to grant either oral argument or a stay of discovery in connection therewith other than to extend the deadlines for discovery set forth in the August scheduling order by the number of days defendant's motion for judgment may have interrupted that pretrial process, and they hereby are.

    [3] See, e.g., Memorandum in Support of Defendant's Motion to Stay Discovery, Attachment B. KICC's entries were of both IC substrates and those

> produced from alumina combined with titanium carbide that
> is harder than 9 on the Mohs scale and is used as a
> substrate for a magnetic head slider in the manufacture
> of disc drives for automatic data processing machines
> ("MH substrates").

Id., first numbered page. Customs had classified the ICs under HTSUS subheading 6914.10.80 and the MHs under subheading 6914.90.80.

While KICC protested both classifications, the court does not read plaintiff's amended complaint as contesting now the classification of the MH substrates.

2002), the Service issued the following holding (as to KICC protest

280900-100735):

> The protest should be GRANTED as to the alternative classification claimed. The blank ceramic substrates referred to as IC substrates are classified in subheading 6909.11.40, which provides for, "Ceramic wares for laboratory, chemical, or other uses . . .: ceramic wares for laboratory, chemical or other uses:  of porcelain or china: other.". . .[4]

Whereupon the first affirmative defense pleaded by the government

is that this court

> lacks jurisdiction over . . . this action[] because the alternative relief sought in the protests which are the subject of this action was granted.

Defendant's Answer to Complaint, p. 3.  And it moves for judgment

on this ground.

A

The plaintiff pleads jurisdiction pursuant to 28 U.S.C.

§1581(a), which states:

> The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

This statute further provides:

> A civil action contesting the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 may be commenced in the Court of International Trade by the person who filed the protest pursuant to section 514 of such Act . . ..

---

[4] Memorandum in Support of Defendant's Motion to Stay Discovery, Attachment C, p. 7 (capitalization in original).

28 U.S.C. §2631(a).  On its face, this enactment reflects the intent of Congress that a partial denial of a protest by Customs be subject to judicial review.  Nonetheless, the defendant denies that this action can sustain such review.  It refers to Sanyo Electric, Inc. v. United States, 81 Cust.Ct. 114, 115, C.D. 4775 (1978), which held that

> the proper measure of the extent to which a protest has been denied or granted is the extent to which the protest has resulted in a change of the protested decision.  When the decision is entirely changed to conform to a decision sought by the protest, that protest has been completely granted.  The only logically consistent way to determine whether a protest has been denied in part is to see whether any part of the protested decision remains in effect.

In that matter, the importer had protested Customs classification of its goods under one item (685.50) of the Tariff Schedules of the United States as opposed to preceding item 685.30 in the same tariff schedule 6 and part thereof or, in the alternative, under an item (678.50) in the preceding part (4) of that same schedule.  The Service granted the protest and reliquidated the merchandise under the first-claimed item 685.30.  The importer brought suit, which was dismissed upon the court's conclusion that the

> proper procedure would be for the party to advance its preferred alternative claim in a new protest against the revised decision following reliquidation of the entry.

81 Cust.Ct. at 115.

Assuming, as the defendant urges, that KICC could have so proceeded with this matter, the question remains whether it was required to do so.  See, e.g., Bd. of Trustees of Leland Stanford Junior Univ. v. United States, 20 CIT 1422, 1424, 948 F.Supp. 1072, 1074 (1996) ("The court must look to what Customs actually did"). Taking such a look herein, this court cannot conclude that the plaintiff was so required. The complaint in  Sanyo apparently prayed for a further, modest shift from item 685.30, the basis of the reliquidation, to the second, proposed alternative classification (item 678.50).  Here, the gravamen of the controversy is an allegedly-precipitous switch by Customs from one distinct chapter of the HTSUS, 85 (Electrical Machinery and Equipment and Parts Thereof), to another, 69 (Ceramic Products).  Paragraph 7 of the amended complaint avers:

> Prior to March 10, 1999, blank IC substrates imported by KICC were classified under HTSUS subheading 8542.90, as parts of integrated circuits, based on HQ 088157 (July 2, 1992), i.e., the "Diacon Ruling," which classified ceramic pieces used as bases for integrated circuits under HTSUS 8542.90, a duty-free classification. The classification determination made in the Diacon Ruling was followed by KICC and Customs until Customs issued NY D88010 (March 10, 1999), which classified blank IC substrates of porcelain under HTSUS 6914.10.8000 as "Other ceramic articles: Of porcelain or china: . . . Other," dutiable at 9% ad valorem.[5]

The first two, numbered protests covered by this pleading encompass entries prior to that day in 1999.  Moreover, the plaintiff

---

[5] The court reads defendant's answer to this averment as a denial, but there is, as yet, no substantiation thereof developed on the record.

has produced a copy of the following declaration to the Customs

Service sworn to soon thereafter by KICC's erstwhile import/export

specialist:

> 2.   In 1992, I became aware of a new ruling, HQ 088157 (July 2, 1992) (i.e., the "Diacon Ruling"), which affected the tariff classification of blank ceramic substrates imported by KICC.  The Diacon Ruling held that "ceramic pieces" used as mounting bases for electronic integrated circuits were properly classified under subheading 8542.90 of the . . . HTSUS[] as parts of integrated circuits.
>
> 3.   Upon learning of the Diacon Ruling, I transmitted a copy . . . to all of KICC's customs brokers in the ports then being used by KICC to import ceramic substrates.  I instructed the brokers to classify all of KICC's ceramic substrates for integrated circuits in accordance with the Diacon Ruling.
>
> 4.   At the same time I advised KICC's customs brokers to attach a copy of the Diacon Ruling to each ceramic substrates entry packet submitted to USCS.
>
> 5.   When KICC underwent a National Customs Survey Audit by the USCS in 1993-95, the auditors reviewed the tariff classification of KICC's imports, including the tariff classification of blank ceramic substrates.  The auditors did not object to any of KICC's classifications.
>
> 6.   On several occasions during my tenure with KICC, I discussed with employees of USCS the implications of the Diacon Ruling for the tariff classification of ceramic substrates imported by KICC.  During these conversations, the USCS employees never objected to the classification of ceramic substrates in accordance with the Diacon Ruling.[6]

Given this background of entry of KICC merchandise under

HTSUS subheading 8542.90, it is understandable that the primary

thrust of its protest of the Bureau's shift to subheading

---

[6] Plaintiff's Opposition to Defendant's Motion to Dismiss, Exhibit C.  The acronym "USCS" refers to the Customs Service.

6914.10.80 was reversion to the antecedent classification. Of course, it is also understandable that, as an alternative prong and within the realm of HTSUS chapter 69, that protest would propose more correct classification. But the grant by Customs of that proposed alternative did not affirmatively satisfy the Sanyo test of whether the KICC protest "has been completely granted." 81 Cust.Ct. at 115. To repeat,

> [t]he only logically consistent way to determine whether a protest has been denied in part is to see whether any part of the protested decision remains in effect.

Id. Here, half of the duties of the protested decision remain in effect (under HTSUS chapter 69) in lieu of chapter 85, "a classification necessarily rejected by Customs when it granted Kyocera's alternative classification claims." Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, p. 4. See also id. at 5. Ergo, this action contests the denial of a protest in part within the meaning of 28 U.S.C. §§ 1581(a), 2631(a), supra. Cf. Atari Caribe, Inc. v. United States, 16 CIT 588, 591-92, 799 F.Supp. 99, 104 (1992).

II

In view of the foregoing, defendant's motion for summary judgment, dismissing this action for lack of subject-matter jurisdiction, must be, and it hereby is, denied.

So ordered.

Dated:  New York, New York
        November 7, 2003

                         _____
                                        Judge